IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EDWARD TED LUNA QUISPE,                 )
                                        )
            Petitioner,                 )
                                        )
v.                                      )          Civil Action No. 1:25-cv-1471-AJT-LRV
                                        )
JEFFREY CRAWFORD, *et al.*,             )
                                        )
            Respondents.                )

## **MEMORANDUM OPINION**

In this habeas petition, Petitioner Edward Luna Quispe seeks release from Immigration and Customs Enforcement ("ICE") custody, arguing that his ongoing detention violates his Fifth Amendment right to substantive and procedural due process, his Eighth Amendment right to protection from cruel and unusual punishments, is *ultra vires* under the Immigration and Nationality Act ("INA"), and that he is entitled to attorney's fees and costs, *see* [Doc. No. 9] (the "Petition"). The Respondents opposed the habeas petition [Doc. No. 12] and the Court held a hearing on the Petition on September 24, 2025, following which it granted the Petition and issued its Order releasing Petitioner from immigration custody, [Doc. No. 14], on the grounds that his detention was subject to 18 U.S.C. § 1226(a), not § 1225 (b)(1), as the government contended, and that his continued detention based on the automatic stay of that release order pursuant to 8 C.F.R. § 1003.19(i)(2) after he was granted his release on bond by the Immigration Judge violated due process, and in further support of that Order, issues this Memorandum Opinion.

1

# I. BACKGROUND

Petitioner is a Peruvian citizen who entered the United States without inspection in March 2006 and has no prior criminal history. [Doc. No. 9] ¶¶ 15, 29. For over ten years he has owned a home remodeling business, which has four employees and has a U.S. citizen child who has filed a relative petition on Petitioner's behalf on August 25, 2025. *Id.* ¶¶ 17, 32. On August 18, 2025, Petitioner was leaving Home Depot in Washington, D.C. when an unidentified vehicle appeared behind him and ordered Petitioner to stop the vehicle. *Id.* ¶ 18. Petitioner provided the men, who never identified themselves, with his Maryland driver's license, before the men detained Petitioner. *Id.* Petitioner was taken to an ICE Field Office in Chantilly, Virginia where he was held for two days before being moved to the Farmville Detention Center on August 20, 2025. *Id.* ¶ 19. While at the processing facility in Chantilly, Virginia, Petitioner was issued a Notice to Appear ("NTA"), which charged him with being inadmissible and thus removable subject to removal proceedings. [Doc. No. 12-2] ¶ 10; [Doc. No. 12-3] at 1–2.

On August 20, 2025, Petitioner, with the aid of counsel, filed a motion for bond and custody redetermination, after which he appeared for a custody redetermination hearing on August 26, 2025. [Doc. No. 9] ¶¶ 23–24. After determining that Petitioner was detained under 8 U.S.C. § 1226(a), [Doc. No. 12] at 7, the Immigration Judge granted Petitioner's release upon his posting a $5,000 bond, after which, Respondents filed a Notice of Intent to Appeal Custody Redetermination, which automatically stayed Petitioner's bond decision pursuant to 8 C.F.R. § 1003.19(i)(2). [Doc. No. 9] ¶¶ 24–25. Petitioner remained in ICE custody for thirty-nine (39) days and was released on September 26, 2025 after this Court ordered his release. *See* [Doc. No. 9] ¶ 18; [Doc. No. 16].

## II. LEGAL STANDARD

"[A] federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F. 4th 209, 213 (4th Cir. 2023) (citing *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999)) (quoting 28 U.S.C. § 2254(a)), *aff'd*, 528 U.S. 225 (2000). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III. DISCUSSION

Petitioner alleges that Respondent's invocation of the automatic stay provision pursuant to 8 C.F.R. § 1003.19(i)(2): (1) violates his substantive and procedural due process rights under the Fifth Amendment (Count I); (2) violates his Eight Amendment right to protection from cruel and unusual punishment (Count II); and (3) is *ultra vires* under the INA in that it exceeds the authority that Congress conferred upon the Department of Homeland Security ("DHS") (Count III).[1] Petitioner further claims attorney's fees and costs under the Equal Access to Justice Act ("EAJA") (Count IV). In their opposition, Respondents argue that this Court lacks jurisdiction over Petitioner's challenge and that Petitioner's detention is lawful and constitutional under the INA because he was detained under 8 U.S.C. § 1225(b)(2) and not 8 U.S.C. § 1226(a).

---

[1] At the September 24, 2025 hearing, Petitioner's counsel represented that Petitioner's Eighth Amendment claim is an alternative ground for relief, and the Court, having granted relief on due process grounds, does not address Petitioner's Eighth Amendment claim (Count II).

A.  <u>Whether the Court has Jurisdiction Over Petitioner's Habeas Claims.</u>

As a threshold matter, Respondents argue that Petitioner must challenge his detention in immigration court, not in federal district court because 8 U.S.C. § 1252(b)(9) "consolidates review of matters *arising from* removal proceedings 'only in judicial review of a final order under this section,' and strips courts of habeas jurisdiction over such matters." [Doc. No. 12] at 9 (emphasis in original). Respondents further argue that 8 U.S.C. § 1252(g) "specifically deprives" this Court of habeas jurisdiction to review Petitioner's claims and that Petitioner may not seek relief under the INA or seek EAJA fees in a habeas petition. The Court considers each argument in turn.

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). In the immigration context, habeas is "regularly invoked on behalf of noncitizens." *St. Cyr*, 533 U.S. at 305. Although the INA and the Real ID Act contain jurisdiction-stripping provisions, they "do not eliminate habeas jurisdiction over all immigration-related detention claims." *Hasan v. Crawford*, No. 1:25-CV-1408, 2025 WL 2682255, at *3 (E.D. Va. Sept. 19, 2025) (citing *Aditva W.H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025)).

i.  *8 U.S.C. § 1252(b)(9)*

Under 8 U.S.C. § 1252(b)(9), which Respondents rely on in support of their jurisdictional challenge, "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to

4

remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). But where a petitioner is "not asking for review of an order of removal" or "challenging any part of the process by which their removability will be determined . . . § 1252(b)(9) does not present a jurisdictional bar." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Hasan*, 2025 WL 2682255, at *4 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are separate and apart from orders of removal.") (internal quotations omitted).

Here, Petitioner does not challenge any removal order and in fact, no order of removal has yet been entered against him. Rather, Petitioner challenges the constitutionality and legality of the automatic stay on the immigration judge's decision to release him on bond, which is "separate and apart from . . . any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d). Therefore, this Court does not lack jurisdiction under 8 U.S.C. § 1252(b)(9).

ii.    *8 U.S.C. § 1252(g)*

Next, Respondents argue that "section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter.'" [Doc. No. 12] at 10 (citing 8 U.S.C. § 1252(g)). But as the Supreme Court has held, Section 1252(g)'s jurisdictional bar should be narrowly construed and, under the plain language of the statute, applies only to three discrete actions: (1) the commencement of removal proceedings, (2) the adjudication of removal proceedings, and (3) the execution of removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is

implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

Here, as stated above, Petitioner challenges the constitutionality of his continued detention pursuant to the automatic stay regulation and notably does *not* challenge the commencement of removal proceedings, the adjudication of removal proceedings, or the execution of removal orders. Prior to his detention, Petitioner was not in removal proceedings, [Doc. No. 9] at 2, and although Petitioner was issued a NTA charging him as being inadmissible to the United States, [Doc. No. 12-2] ¶ 10, no removal order has been entered against him. Therefore, because Petitioner's proceedings are "independent of, and collateral to, the removal process," *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025), the Court is not deprived of jurisdiction under Section 1252(g).

      iii.   *EAJA*

Respondents next argue that Petitioner may not seek relief under the EAJA, as he does in Count Four, requesting attorney's costs and fees, because "a civil claim is not cognizable in the habeas context." [Doc. No. 12] at 11–12. Respondents are correct. In *Obando-Segura v. Garland*, the Fourth Circuit held that a habeas proceeding is not a "civil action" under the EAJA and therefore affirmed the district court's denial of the petitioner's request to attorney's fees under the act. 999 F.3d 190, 195 (4th Cir. 2021) (The "dual aspects, as well as the differences between habeas proceedings and normal civil actions, render habeas proceedings as a whole hybrid proceedings and dictate that [petitioner's] application for the writ of habeas corpus is not unambiguously a civil action." (internal quotations omitted).

For the above reasons, the Court has jurisdiction over Petitioner's claims with respect to the legality and constitutionality of the automatic stay and Petitioner has no cognizable claim for attorney's fees and costs under the EAJA.

B.  Whether Petitioner's Detention is Statutorily Authorized.

On the merits, Petitioner argues that Respondents' invocation of the automatic stay provision, pursuant to 8 C.F.R. § 1003.19(i)(2), violates his substantive and procedural due process rights under the Fifth Amendment to the Constitution. Central to that issue is what statute authorizes Petitioner's detention, *see Abreu v. Crawford*, 2025 WL 51475, at *3–4 (E.D. Va. Jan. 8, 2025); and as the parties agreed during the hearing held on September 24, 2025, the dispositive issue with respect to the Petition reduces to whether Petitioner's detention is governed by the mandatory detention provisions in 8 U.S.C. § 1225(b)(2) or the discretionary detention provisions in 8 U.S.C. § 1226(a). Respondents argue that Petitioner's release is governed by Section 1225(b)(2) and is therefore "statutorily foreclosed" because he is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2), not discretionary detention pursuant to section 1226(a). [Doc. No. 12] at 13–14.  By contrast, Petitioner contends that he  cannot be deemed "an applicant for admission" and his detention is governed section 1226(a), which sets forth "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 288, under which the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." 8 U.S.C. § 1226(a)(1)-(2).

Section 1225(a) provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission are either covered by Section 1225(b)(1) or 1225(b)(2)." *Rodriguez v. Bondi*, 2025 WL 2490670, at *2 (E.D. Va. June 24, 2025). Section 1225(b)(2) applies to all applicants that are not "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," or who receive

7

special designation by the Attorney General. *See Jennings*, 583 U.S. at 287 (explaining that §
1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered
by § 1225(b)(1)"). Both sections 1225(b)(1) and (b)(2) require the detention of persons deemed to
be applicants for admission "until their asylum application is fully adjudicated or until removal
proceedings conclude." *Rodriguez*, 2025 WL 2490670, at *2. Applicants for admission covered
by § 1225(b)(2) "shall be detained for a [removal] proceeding" if an immigration officer
"determines that an alien seeking admission is not clearly and beyond doubt entitled to be
admitted" into the United States.[2] 8 U.S.C. § 1225(b)(2)(A). Section 1225(b) also allows for an
applicant for admission to be released on parole "for urgent humanitarian reasons or significant
public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

　　In support of its position that Petitioner is an "applicant for admission" and therefore
subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), Respondents point to
Petitioner's entry  into the United States without inspection in 2006 and contend that because he
did not satisfy the INA's criteria for admission, defined as "the lawful entry of the alien into the
United States after inspection and authorization by an immigration officer," 8 U.S.C. §
1101(a)(13), he must be deemed to be "inadmissible" under 8 U.S.C. § 1182(a)(6)(A)(i) and is
"ineligible to be admitted,"[3] rendering him an "applicant for admission" for the purposes of 8
U.S.C. § 1225. [Doc. No. 12] at 13–14. But the statute also provides that "[t]he term 'application

---

[2] By contrast, applicants for admission covered by § 1225(b)(1), which neither party argues applies in this case, are
removed "without further hearing or review" pursuant to an expedited removal process unless the person "indicates
either an intention to apply for asylum . . . or a fear of persecution," in which case that person is referred for an
asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii).
[3] 8 U.S.C. § 1182(a)(6)(A)(i) provides: "[A]liens who are inadmissible under the following paragraphs are ineligible
to receive visas and ineligible to be admitted to the United States: . . . An alien present in the United States without
being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the
Attorney General, is inadmissible."

for admission' has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa." 8 U.S.C. § 1101(a)(4). As this Court has previously recognized, this definition, when read together with the present tense formulation of § 1225(b)(2)(A), requiring a determination by the immigration officer that "an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A) (emphasis added), brings within its scope only those individuals actively seeking admission into the country, and not those that have already entered the county (albeit unlawfully). *See Hasan*, 2025 WL 2682255, at *8. Indeed, as Respondents recognize, other federal courts around the country have found that in order to be detained under § 1225(b)(2), applicants for admission must be actively "seeking admission" and not be just "present" in the U.S.[4]

Relying on the Court's decision in *Rodriguez v. Perry*, 747 F. Supp. 3d 911 (E.D. Va. 2024) (Brinkema, J.), Respondents further contend that Petitioner cannot be detained under section 1226(a) because he must have "lawful status to be detained" under this section. [Doc. No. 12] at 14. In *Rodriguez v. Perry*, the Court granted a habeas petition, finding that although the petitioner was initially an "arriving alien" subject to § 1225(b)(2), his Special Immigrant Juvenile status "converted him from being an arriving alien to an alien present in the United States," meaning that he was entitled to an individualized "bond hearing . . . under § 1226(a)." *Rodriguez*, 747 F. Supp. 3d at 916. The Court has subsequently clarified that its opinion should not be read to hold that section 1226(a) applies only to individuals with lawful status, and such an interpretation lacks both statutory and precedential basis. *Hasan*, 2025 WL 2682255, at *6. Indeed, nowhere in section

---

[4] *See, e.g.*, *Lopez Benitez v. Francis,* No. 25 Civ. 5937, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) ("While respondents are correct that [petitioner] was never 'admitted' to the United States in that he never lawfully entered it (and is therefore treated as an 'applicant for admission' under various provisions of the statute), it does not follow that he continues to be actively 'seeking' such lawful entry at this time."); *Martinez v. Hyde*, No. CV 25-11613, 2025 WL 2084238, at *3-4 (D. Mass. 2025) (same).

9

1226(a) is there a requirement of lawful status and "courts are not free to read into the language [of a statute] what is not there." *O'Hara v. Nika Techs., Inc.*, 878 F.3d 470, 475 (4th Cir. 2017) (quoting *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994)). This Court therefore rejects Respondents' contention that section 1226(a) does not apply to Petitioner's claims simply because he lacks legal status.

Respondents also contend that "as a matter of statutory construction, § 1225(b)(2)(A) governs because it contains specific mandatory language, *see* 8. U.S.C. § 1225(b)(2)(A) ('the alien *shall* be detained'), as opposed to § 1226(a)'s general discretionary and permissive language, *see* [8. U.S.C. § 1226] ('an alien *may* be arrested and detained')." [Doc. No. 12] at 15 (emphasis in original). But as the Court observed in *Hasan*, which involved facts similar to those presented here, "the federal respondents' view of this case fails to take account of traditional tools of statutory construction." *Hasan*, 2025 WL 2682255, at *8. Indeed, under Respondents' interpretation that section 1225(b)'s mandatory detention provisions apply to all persons who have not been admitted into the United States, the provisions of section 1226 that apply to certain categories of inadmissible aliens would be superfluous.[5] *Id.* ("If an interpretation of one provision 'would render another provision superfluous,' courts presume that interpretation is incorrect.") (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)).

Finally, relying on *Jennings*, in which the Supreme Court distinguished between applicants for admission who are subject to mandatory detention under section 1225 and those subject to mandatory detention under section 1226 due to their status as "deportable aliens," 583 U.S. at 288–

---

[5] For example, section 1226(c)(1)(A) provides that the "Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," such as crimes of moral turpitude and offenses relating to controlled substances. 8 U.S.C. § 1226(c)(1)(A). This mandatory detention under § 1226(c) would be unnecessary if all persons who have not been admitted into the United States were already subject to § 1225(b)'s mandatory detention provisions.

89, Respondents argue that "since [Petitioner] is not charged with any deportability grounds . . . he cannot be detained under 8 U.S.C. § 1226." [Doc. No. 12] at 15. But Respondents' position focuses on § 1226(c), which applies to "a statutory category of aliens who may *not* be released" (due to being "deportable") and ignores the "default rule" in § 1226(a), as construed by the Supreme Court in *Jennings*.[6]   There, the Supreme Court construed the relationship between § 1225(b), which the Court held governs "aliens seeking admission into the country," and § 1226(a), which governs "aliens already in the country" who are subject to removal proceedings. 583 U.S. at 289.[7] Petitioner has been present in the United States since 2006, and indeed, in the very document that charges him as removable, the Government checked the box stating that Petitioner is "an alien present in the United States who has not been admitted or paroled," [Doc. No. 12-3 at 1], rather than "an arriving alien," essentially acknowledging that Petitioner is not an "arriving alien."[8]

For the above reasons, Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as at least thirty federal district courts

---

[6] 583 U.S. at 288–89 ("Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States. 'Except as provided in subsection (c) of this section,' the Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.') (quoting 8 U.S.C. § 1226)).

[7] *See also Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025, at *9 (D. Md. Aug. 24, 2025) (finding that petitioner was subject to § 1226(a) and not § 1225(b) because he was arrested in the interior of the United States and thus not an "arriving alien."); *Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("conclud[ing] that the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States.").

[8] The NOA distinguishes between three types of individuals: (1) an "arriving alien;" (2) "an alien present in the United States who has not been admitted or paroled;" and (3) an alien "admitted to the United States but removable." *See* [Doc. No. 12-3 at 1].

around the country, including two in this Circuit, have concluded when faced with habeas petitions from comparably situated petitioners.[9]

## C. Whether the Automatic Stay Violates Petitioner's Constitutional Rights.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. This guarantee includes a procedural component that protects the erroneous deprivation of liberty and property rights, *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and a substantive component that mandates the application of strict scrutiny whenever the government infringes on fundamental liberty interests, regardless of what process the government provides. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 170 (4th Cir. 2010). In Count One of his petition, Petitioner claims that his continued

---

[9] *See Leal-Hernandez*, 2025 WL 2430025; *Hasan*, 2025 WL 2682255; *Martinez*, 2025 WL 2084238; *Gomes*, 2025 WL 1869299; *Reyes v. Lyons*, No. C25-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Mosqueda et al. v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025); *Jimenez v. FCI Berlin, Warden*, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Doe v. Moniz*, No. 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Fernandez v. Lyons*, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025); *Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Vasquez Garcia et al. v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Lopez-Campos v. Raycroft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *J.O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Romero v. Hyde*, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *Samb v. Joyce*, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *Lopez Benitez v. Francis,* 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Orellana Juarez v. Moniz*, 2025 WL 1698600 (D. Mass. June 11, 2025); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). During the hearing, Respondents stated they did not know of any court that had adopted their position with respect to the applicability of sections 1225(a)(1) and 1226(b).

detention based on the automatic stay regulation (8 C.F.R. § 1003.19(i)(2))[10] violates his constitutional procedural and substantive due process rights. [Doc. No. 9] ¶¶ 36–50.[11]

> ### i. *Substantive Due Process*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or, in certain special and 'narrow' nonpunitive 'circumstances' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (emphasis in original) (internal citations omitted). Substantive due process protections "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (internal citations omitted).

Respondents initially contend that "Petitioner's substantive due process claim fails on the merits . . . [because] Petitioner has no fundamental right to be in the U.S.," [Doc. No. 12] at 24;

---

[10] 8 C.F.R. § 1003.19(i)(2) provides that "[i]n any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order." The "automatic stay shall lapse 90 days after the filing of the notice of appeal" if the Board of Immigration Appeals ("BIA") has not acted on the appeal. *Id.* § 1003.6(c)(4). If the noncitizen requests an enlargement of the BIA's 21-day briefing schedule, the 90 days is tolled. *Id.* DHS may also seek a discretionary stay after the automatic stay has elapsed, *id.* § 1003.19(i)(1), which results in an additional 30-day extension, *id.* § 1003.6(c)(5). If the BIA fails to act on DHS's discretionary stay request, "the alien's release shall be automatically stayed for five business days." *Id.* § 1003.6(d). If during those five days DHS refers the case to the Attorney General, "[t]he automatic stay will expire 15 business days after the case is referred to the Attorney General." *Id.* In sum, the automatic stay regulation can hold an individual in custody for approximately 140 days after the immigration judge's initial bond determination.

[11] Petitioner's argument has been endorsed by a growing number of courts, all of which have found that the automatic stay provision violates both substantive and procedural due process. *See, e.g.*, *Hasan*, 2025 WL 2682255; *Leal-Hernandez*, 2025 WL 2430025; *Mohammad H. v. Trump*, No. 25-cv-1576, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025).

but that contention is incorrect as a matter of law.[12] And Respondents have not provided any other special justification to deny Petitioner the liberty that the immigration judge ordered subject to his posting a $5,000 bond. In issuing a bond, the immigration judge found that the Petitioner was not a danger to the community or a flight risk, and as Petitioner has represented, he "has every incentive to show up to his immigration court proceedings as he is eligible for multiple forms of relief from removal."[13] [Doc. No. 9] ¶ 46. Although the government has wide discretion in immigration matters, "[i]nvocation of the automatic stay per 8 C.F.R. § 1003.19(i)(2) renders the IJ's custody redetermination order an 'empty gesture' absent demonstration of a compelling interest or special circumstance," *Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025, at *13 (D. Md. Aug. 24, 2025), and on this record, there is nothing to suggest a "compelling or special circumstance" that would warrant vacating the immigration judge's decision to release Petitioner on bond.

For the above reasons, the automatic stay resulted in Petitioner's arbitrary detention in violation of his Fifth Amendment substantive due process rights.

    ii.   *Procedural Due Process*

Petitioner also argues that the automatic stay regulation violates his procedural due process rights. [Doc. No. 9] ¶¶ 36–50. To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews*

---

[12] *See Zadvydas*, 533 U.S. at 693 (explaining that the guarantee of substantive due process "applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent") (internal quotations omitted); *United States v. Lopez-Collazo*, 824 F.3d 453, 461 (4th Cir. 2016) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens has always been constrained by the requirements of due process.").

[13] *See Leal-Hernandez*, 2025 WL 2430025, at *13 (finding that flight risk concerns were accounted for by the immigration judge's imposition of a $10,000 bond on the petitioner's release); *Hasan*, 2025 WL 2682255, at *10 (same).

*v. Eldridge. See* 424 U.S. at 335. Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Petitioner's interest at stake is his bodily freedom, the "most elemental of liberty interests," *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004), which lies at "the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Petitioner does not claim, as Respondents contend, a "constitutional right to be released from custody during the pendency of removal proceedings," [Doc. No. 12] at 26, but rather, a private interest in being free from the physical detention that the immigration judge found inappropriate. Moreover, "when assessing the first *Mathews* factor, courts also consider the 'conditions under which detainees are currently held, including whether the detainee is held in conditions indistinguishable from criminal incarceration.'" *Hasan*, 2025 WL 2682255, at *11 (internal citations omitted). Here, Petitioner is "being detained hundreds of miles from his family and without guaranteed access to vital medications." [Doc. No. 9] ¶ 42. Respondents contend that Petitioner's private interests are "diminished" because his release would assist with "an ongoing violation of U.S. law," [Doc. No. 12] at 26, but Respondents fail to recognize that releasing Petitioner on bond, pursuant to the immigration judge's recommendation, does not preclude the government from moving forward with its removal proceedings against Petitioner at the appropriate time. Accordingly, the first *Mathews* factor supports Petitioner's claim of a procedural due process violation.

As to the second *Mathews* factor, the risk of an erroneous deprivation of private interests and the extent to which additional procedures would mitigate that risk, "[t]he automatic stay provision creates a substantial risk of erroneous deprivation of [Petitioner's] interest in being free from arbitrary confinement because invocation of the automatic stay fails to account for any individualized facts." *Hasan*, 2025 WL 2682255, at *12. It also dangerously conflates the Respondents' role in immigration proceedings and allows Respondents to usurp the role of the adjudicator despite Petitioner's grant of a bond by a neutral fact-finder. *See Leal-Hernandez*, 2025 WL 2430025, at *14 ("The automatic stay is a violent distortion of proper, legitimate process whereby the Government, as though by talisman, renders itself at once prosecutor and adjudicator.").[14] [15] Disabling the automatic stay would also not leave the Respondents without the ability to challenge an immigration judge's release decision. In that regard, the regulations contemplate two procedures DHS may use to contest an immigration judge's bond release order: (1) DHS could request a discretionary stay from the BIA pursuant to 8 C.F.R. § 1003.19(i)(1), which requires the BIA to consider the individual circumstances and merits of the request, 8 C.F.R. § 1003.6(c)(4), and (2) DHS could follow the normal appeal procedures to seek review of an immigration judge's adverse bond decision. *See* 8 C.F.R. § 1236.1(d)(3). Because there is a high risk of an erroneous deprivation of private rights, and alternative procedures could alleviate those

---

[14] *See also Hasan*, 2025 WL 2682255, at *12 ("This regulation is an anomaly in this country's legal system and creates a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified.") (internal quotations omitted); *Herrera v. Knight*, No. 2:25-CV-01366, 2025 WL 2581792, at *11 (D. Nev. Sept. 5, 2025) (describing the automatic stay as creating a "conflict of interest").

[15] In response, Respondents rely essentially on their position that Petitioner is an "applicant for admission," and is subject to mandatory detention by law, but as discussed above, this argument fails on statutory interpretation grounds. Respondents further argue that because Petitioner's detention cannot be indefinite under the statute, the risk of erroneous deprivation is lower. [Doc. No. 12] at 27–28. But the fact that Respondents may be required in the future to release Petitioner does not cure the procedural defect of invoking an automatic stay in contravention of the immigration judge's release decision.

risks, the second *Mathews* factor supports Petitioner's claim of a procedural due process violation.[16]

Turning to the third *Mathews* factor, Respondents argue that their interests in mandatory detention are "legitimate and significant" because immigration enforcement is a "vital public interest" and mandatory detention remedies the risk of untimely removal of aliens. [Doc. No. 12] at 28–29. But Respondents do not explain why these interests would not be adequately protected by the individualized determination of an immigration judge as to whether an individual should be released on bond under section 1226(a) or their ability to have that release decision reviewed under the existing regulations. As discussed above, there is currently no order of removal pending against Petitioner, and he otherwise does not pose a flight risk or a risk to the public and has thus far fully cooperated with Respondents. Therefore, the third *Mathews* factor supports Petitioner's claim of a procedural due process violation.

For the above reasons, Respondents' invocation of the automatic stay resulted in Petitioner's arbitrary detention in violation of his Fifth Amendment procedural due process rights.

D.   Whether the Automatic Stay Regulation is *Ultra Vires.*

In Count Three, Petitioner contends that "the automatic stay is an *ultra vires* exercise of regulatory authority in that it exceeds the authority that Congress conferred upon DHS and unlawfully removes the authority from the immigration judge to determine bond eligibility." Respondents contend the automatic stay regulation is not *ultra vires* because Congress has granted the Attorney General broad discretion to delegate their powers and ICE's invocation of the

---

[16] At the hearing, Respondents also referenced "self-deportation" as an available remedy to the Petitioner, but that "alternative" does not justify the deprivation of Petitioner's liberty interest, particularly when voluntary deportation would not be readily available while detained.

automatic stay regulation is a valid exercise of this delegation. [Doc. No. 12] at 29–30. The Court agrees with Petitioner.

"The power of administrative agencies (unlike courts) is prescribed entirely by statute, [thus], any improper agency action is *ultra vires*." *United States v. Cortez*, 930 F.3d 350, 357 (4th Cir. 2019) (cleaned up). Under section 1226(a), the Attorney General is authorized to detain or release aliens on bond, and is further permitted to delegate detention determinations to "any other officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510. Immigration judges are administrative law judges within the DOJ and are thus properly delegated bond-determination authority. *See* 8 U.S.C. § 1101(b)(4). By contrast, the DHS, the party that invoked the automatic stay provision, is not within the Department of Justice, but is a separate executive department. *See* 6 U.S.C. § 111. In allowing DHS to extend Petitioner's detention unilaterally, in direct contravention of the immigration judge's determination that he be released on bond, the automatic stay provision pursuant to 8 C.F.R § 1003.19(i)(2) exceeds the statutory authority conferred upon DHS and is, therefore, *ultra vires*. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1079 (N.D. Cal. 2004) ("Because this back-ended approach effectively transforms a discretionary decision by the immigration judge to a mandatory detention imposed by [DHS], it flouts the express intent of Congress and is *ultra vires* to the statute."); *Leal-Hernandez*, 2025 WL 2430025, at *15 (finding automatic stay provision to be *ultra vires* because it "renders both the discretionary nature of Petitioner's detention and the IJ's authority a nullity."); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024) ("[T]he Court did not extend similar deference to agency resolutions of questions of *law*. It instead made clear, repeatedly, that 'the interpretation of the meaning of statutes, as applied to justiciable controversies,' was 'exclusively a judicial function.'")

(emphasis in original) (cleaned up). For these reasons, the automatic stay regulation, and Petitioner's detention on that basis, is *ultra vires* and unlawful.

## IV. CONCLUSION

For the above reasons and as stated in the September 24, 2025 Order, [Doc. No. 14], the Court has granted the Petition and issued its Order dated September 24, 2025 releasing Petitioner upon the posting of the bond required by the Immigration Judge.


September 29, 2025
Alexandria, Virginia

Anthony J. Trenga
Senior U.S. District Judge